UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HORIZON NAVIGATION LTD.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-4497** |
| **PROGRESSIVE BARGE LINE, INC. ET AL** | **SECTION "L" (3)** |

## ORDER & REASONS

Before the Court is a motion to dismiss filed by Third-Party Defendant Ausca Shipping Limited ("Ausca"). R. Doc. 63. Plaintiff Horizon Navigation Ltd. ("Horizon") and Defendant Progressive Barge Line, Inc. ("Progressive") oppose the motion. R. Docs. 67, 69. The Court heard oral argument on the motion on March 20, 2019. R. Doc. 70. Having considered the parties' arguments and reviewed the applicable law, the Court is ready to rule.

### I. BACKGROUND

This case arises out of an oil spill in the Mississippi River that occurred during the refueling of the M/V VITAHORIZON, for which the vessel's owner, Horizon, seeks to recover "fines, penalties, response costs and/or damages exceeding $1.1 million" from Defendant Progressive. R. Doc. 1 at ¶ 14. According to Horizon's complaint, Progressive overfilled the M/V VITAHORIZON's fuel tanks after allegedly failing to inform those aboard the vessel that the amount of the original fuel order had been increased from 1600 metric tons to 1650 metric tons. *Id.* at ¶¶ 6–12.

Prior to the spill, Ausca entered into a time charter with Horizon for the M/V

VITAHORIZON. R. Doc. 28 at ¶ 11.[1] According to Progressive's third-party complaint, the time charter "obligates Charterer, Ausca, to provide and pay for all fuel (also known as bunkers) for the M/V VITAHORIZON." *Id.* at ¶ 12. Pursuant to this obligation, Progressive alleges, "Ausca contracted with [non-party Glander International Bunkering (Norway) AS ("Glander")] . . . to arrange for purchase of, and delivery to, M/V VITAHORIZON a quantity of bunkers." *Id.* at ¶ 15. In turn, Glander, allegedly acting as Ausca's agent, contracted with non-party Chevron Marine Products LLC ("Chevron") to purchase fuel for the VITAHORIZON. *Id.* at ¶ 17. On August 30, 2017, Chevron contracted with Progressive to deliver fuel to the M/V VITAHORIZON. R. Doc. 1 at ¶ 6. The next day, Chevron instructed Progressive to increase the amount of fuel to be delivered to the VITAHORIZON from 1,600 metric tons to 1,650 metric tons. *Id.* at ¶ 7.

Horizon alleges that, "[d]espite the increased order amount, on or about September 2, 2017, Progressive informed the VITAHORIZON that it would be delivering 1,600 metric tons of [heavy fuel oil ("HFO")] to the ship. Progressive never informed the VITAHORIZON that the amount of HFO ordered for delivery had been increased to 1,650 metric tons, or that it would pump more than 1,600 metric tons to the VITAHORIZON." *Id.* at ¶ 8. As a result, on September 3, 2017, "Progressive's crew overfilled the VITAHORIZON's bunker tanks causing HFO to spill onto the ship's deck, down her side, onto one or more of Progressive's vessels and into the Mississippi River." *Id.* at ¶ 12.

On May 1, 2018, Horizon filed suit against Progressive for "damages, expenses, costs and

---

[1] The time charter is routine practice in the marine transport industry. *Sagaan Developments & Trading Ltd. v. Quail Cruises Ship Mgmt.*, No. 11–23873, 2013 WL 2250793, at *5 (S.D. Fla. May 22, 2013) (unpublished). "The general scheme of a time charter is that the owner turns over a fully equipped ship to the charterer and operates the ship for the charterer's benefit, being compensated by monthly hire." *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 998 (1st Cir. 1983). Typically, "the owners pay the crew wages and supply their food, pay for engine room stores, keep the vessel repaired and pay for insurance[;] almost everything else falls upon the charterer." *Id.* (internal quotation marks omitted).

2

all other losses resulting from the incident," alleging the damage was caused by Progressive's negligence and its vessels' unseaworthiness. *Id.* at ¶ 15.[2] On August 30, 2018, Progressive filed a counterclaim against Horizon. R. Doc. 21. On September 21, 2018, Progressive filed a third-party complaint against Ausca and tendered to Ausca Horizon's complaint against Progressive, pursuant to Federal Rule of Civil Procedure 14(c). R. Doc. 28 at ¶ 1. Progressive alleges Ausca, as the charterer, had the legal duty and contractual obligation to purchase fuel for the vessel, provide orders and directions to the M/V VITAHORIZON's captain, and to advise Horizon of the number of bunkers to be delivered. *Id.* at ¶¶ 23–24. Progressive contends the damages sustained by both Progressive and Horizon were caused by Ausca's fault, negligence, want of due care, and breach of contractual obligations. *Id.* at ¶¶ 25–26.

On November 12, 2018, Ausca filed a motion seeking dismissal of Progressive's claims against it, or alternatively, to stay Progressive's Rule 14(c) tender pending arbitration. R. Doc. 34. The Court denied the motion in part and granted the motion in part following oral argument on February 5, 2019. R. Doc. 59. The Court denied the motion to the extent Ausca sought dismissal of Progressive's direct claims against it, but stayed the claims against Ausca brought by Horizon via Progressive's Rule 14(c) tender pending the outcome of contractually mandated arbitration. *Id.* at 15.

## II. PENDING MOTION

### a. Ausca's Motion to Dismiss Progressive Barge Line Inc.'s Claims for Indemnity and Contribution

In its motion, Ausca argues the Court should dismiss Progressive's indemnification and

---

[2] Horizon submits it has "maritime liens against the MN JUSTICE and the barge PBL 3001, her engines, boilers, tackle, apparel, furniture, etc., in rem, for the sum of about $ 1.1 million, plus interest from the date of the incident, costs and attorneys' fees, representing Horizon's losses due to the aforesaid incident." R. Doc. 1 at ¶ 16.

contribution claims against it, as it agrees with Progressive's prior suggestion that the Court treat Ausca as a settling Defendant, thereby allowing Horizon to recover from Progressive only the proportion of liability for which the Court finds Progressive responsible at the bench trial of this matter. R. Doc. 63. According to Ausca, because the Court stayed the Rule 14(c) tender, Progressive's claims for indemnification or contribution "have been vitiated or voided . . . [and] are no longer operative." R. Doc. 63-1 at 3, 6. Further, Ausca contends, to allow Progressive to seek contribution from Ausca following trial would constitute an "end-run" of the arbitration clause between Ausca and Horizon, as litigating the contribution claim would require Ausca to defend claims that it is liable to Horizon. *Id.* at 4–5. Finally, Ausca points to this Court's prior order, which states "even if Horizon never brings claims against Ausca, Progressive's interests will be protected, as apportionment of liability exists whether or not Ausca is impleaded under Rule 14(c)." *Id.* at 7 (quoting R. Doc. 59 at 14). According to Ausca, based on this quoted sentence, the apportionment of liability approach is already the law of this case. *Id.*

b. **Progressive's Opposition**

Progressive opposes Ausca's motion, arguing "if Progressive and Ausca are found to be concurrently at fault for Horizon's alleged damages, and Horizon seeks to recover all of its damages from Progressive, then Progressive would have a right to seek contribution from Ausca for any amounts paid over and above Progressive's proportionate share of the damages." R. Doc. 67 at 4. Next, Progressive argues that a judgment on the pleadings dismissing Progressive's contribution and indemnity claims would effectively operate as a dismissal of those claims on the merits. *Id.* at 5. Thus, Progressive argues, a premature dismissal of Progressive's contribution and indemnity claims on the merits, with prejudice, could potentially preclude Progressive from attempting to demonstrate at trial that Ausca is actually the party at fault for Horizon's alleged

4

damages. *Id.* at 6.

   c. **Horizon's Opposition**

In its opposition, Horizon argues joint and several liability must apply to this case, contending, "the longstanding maritime rule of joint and several liability has been repeatedly reaffirmed by the U.S. Supreme Court and the Fifth Circuit," and that, therefore there is no compelling reason to deviate from the firmly established rule of joint and several liability merely because Progressive alleges Ausca is wholly or partially responsible for the claims Horizon has asserted against Progressive. *Id.* at 6. Horizon further submits that, "[i]f a defendant-tortfeasor contends that another entity is partially or wholly liable for the loss, it is the defendant's responsibility – not the plaintiff's – to bring that entity into the suit so that liability can be apportioned," and that "[t]he defendant bears the risk that the shares of other tortfeasors will be uncollectible." *Id.* at 7.

III. **LAW & ANALYSIS**

In its motion, Ausca contends the best solution to the issue of whether Progressive may seek indemnity or contribution from Ausca despite the Court having previously stayed Progressive's Rule 14(c) tender of Horizon's complaint to Ausca is for the Court to treat Ausca as a settling joint-tortfeasor, thereby limiting Horizon's recovery at trial against Progressive to Progressive's proportionate share of the liability only. This scheme, Ausca contends, would extirpate the need for Progressive to seek contribution from Ausca in the event Progressive is found liable to Horizon at trial. Ausca has not, however, pointed to any case in which a court has treated an alleged joint-tortfeasor that has an arbitration agreement with the plaintiff as though the plaintiff had settled its claims against that party. Instead, Ausca points to *McDermott, Inc. v.*

5

*AmClyde*, 511 U.S. 202 (1994) and asks the Court to extend the rule established thereby to the case at bar.

In *McDermott*, a crane owner brought an admiralty action against several joint-tortfeasors but settled with one of the defendants before going to trial. The U.S. Supreme Court was therefore called upon to determine how a settlement with less than all of the defendants in an admiralty case should affect the liability of the non-settling defendants. The Court held that under such circumstances, joint and several liability would not apply; rather, the "proportionate share" approach would be applicable, whereby the non-settling defendants were responsible only for their portion of fault. Based on that premise, the Court held that "no suits for contribution from the settling defendants are permitted, nor are they necessary, because the nonsettling defendants pay no more than their share of the judgment." 511 U.S. at 209. The Supreme Court cautioned, however, that "the proportionate share rule announced in [*McDermott*] applies *when there has been a settlement*," as "[i]n such cases, the plaintiff's recovery against the settling defendant has been limited not by outside forces, but by its own agreement to settle." *Id.* at 221 (emphasis added).

Since the U.S. Supreme Court issued its opinion in *McDermott*, many courts have declined to extend its rationale beyond settling defendants. For example, in *Hays v. Foster Wheeler Energy Corp.*, No. 09-81881, 2014 WL 12661273, at *2 (S.D. Fla. Sept. 15, 2014), the court declined to allow the jury to apportion fault to non-parties from whom the plaintiff received funds via bankruptcy settlement trusts. There, the court rationalized that, the "[a]mounts received by Plaintiff from bankruptcy settlement trusts are limited by outside forces," and did not involve a situation in which the plaintiff "voluntarily negotiated a meager settlement." *Id.* at *3. Accordingly, the *Hays* court held the non-settling defendant was not entitled to a setoff for

amounts the plaintiff received from the bankruptcy trust, nor would the defendant be permitted to apportion liability to any bankrupt defendant. *Id.*

In some limited cases, courts have found the application of the proportionate fault rule to non-parties is consistent with the rule announced in *McDermott*. In *Sigler v. Grace Offshore Co.*, for example, Louisiana's Third Circuit Court of Appeals held that a voluntary dismissal of a case is akin to a settlement sufficient to bar one defendant's third-party claim against the defendant against whom the plaintiff voluntarily dismissed its claims. 95-357 (La. App. 3 Cir. 10/4/95), 663 So.2d 212 at 215. As the Louisiana court explained,

> Although there has not been a settlement *per se* in this case, the plaintiff voluntarily dismissed his claims against Grace and CNA with prejudice. For purposes of the proportionate allocation of fault, we discern no distinction between a settlement and a voluntary dismissal. Both are agreements entered into by the plaintiff which serve to limit his recovery as opposed to the outside forces such as insolvency or statutory immunity discussed in *McDermott*.

*Id.* at 215; *see also Cargill Ferrous Intern. Div. of Cargill, Inc. v. M/V PRINCESS MARGHERITA*, No. 98–3825, 2001 WL 1426678, at *1 (E.D. La. Nov. 13, 2001) (applying *McDermott* after plaintiff voluntarily dismissed one defendant with prejudice, rejecting plaintiff's argument that *McDermott* was inapplicable because "no formal settlement agreement was confected (i.e. no money changed hands)," noting that "there is no requirement under *AmClyde* that the settlement be for a reasonable amount, or for any amount of money at all").

In this case, Ausca seeks to extend *McDermott*'s holding to cases in which an alleged joint-tortfeasor holds a valid and enforceable arbitration agreement with the plaintiff. Because "the apportioned share set-off rule is superior to a rule permitting (or requiring) suits for contribution and indemnity because the former rule promotes both judicial economy and settlement—while also avoiding collusive settlement by placing the burden of a low settlement on the plaintiff," Ausca's proposed course of action is a tempting proposition. *Koppers Co. v.*

*Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1453 n.15 (3rd Cir. 1996); *see also McDermott*, 511 U.S. at 211 (stating the aim of the rule announced in that case was to encourage settlement and avoid "unnecessary *ancillary* litigation" (emphasis added)).

Moreover, like the plaintiff in *Sigler* and indeed *McDermott* itself, Horizon's inability to bring claims against Ausca in this litigation is a product of its choice—namely, Horizon's decision to enter into an arbitration agreement with Ausca. This arbitration agreement, which Horizon freely entered, prevents Horizon from bringing suit against Ausca in this Court. Moreover, as this Court held in its February 5, 2019 opinion, Progressive's Rule 14(c) tender of Horizon's complaint to Ausca cannot be maintained precisely because of the arbitration agreement between Horizon and Ausca. *See cf. McDermott*, 511 U.S. at 221 ("[T]he plaintiff's recovery against the settling defendant has been limited not by outside forces, but by its own agreement to settle."). That Horizon's recovery has been limited by its own choice and not outside forces militates in favor of filing *McDermott* applicable in this case.

However, expediency, fairness, and judicial economy are not the Court's only considerations in determining whether to extend the rule of *McDermott* to cases in which a joint tort-feasor holds a binding arbitration agreement with the plaintiff. As Plaintiff Horizon points out, in maritime cases, "defendants, not the plaintiff, bear the risk of noncollection of a judgment." R. Doc. 69 at 6. As the Fifth Circuit has explained:

> The common law has long held that each and every one of several tortfeasors is liable for the full amount of an injured plaintiff's damages. In its purest application, this rule of "joint and several liability" permits a plaintiff to obtain full legal redress from any defendant, even if that defendant's actions were not solely responsible for the plaintiff's injuries. Thus, joint and several liability can produce a seemingly inequitable result: one defendant might alone be required to bear the burden of several defendants' wrongs.

*Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 829–30 (5th Cir. 1992).

8

Here, although it appears Horizon has chosen to forgo any claims it has against Ausca, it has not formally reached any type of settlement with Ausca. Moreover, Horizon clearly has not voluntarily dismissed its claims against Ausca. While Horizon chose to sue only Progressive, joint and several liability entitles it to do just that and still collect the full amount of its damages. *See Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1128 (5th Cir. 1995) (en banc) (citing McDermott, 511 U.S. at 221); *Sands v. Kawasaki Motors Corp., USA*, 513 F. App'x 847, 854–55 (11th Cir. 2013) (determining that joint and several liability meant that the plaintiff in a personal injury admiralty action was "permitted to sue [the named defendant] for the full amount of her damages, even though [another individual who was not a party to the litigation] might have contributed to her injuries" and refusing to apply the proportionate fault approach). Horizon's decision not to initiate arbitration with Ausca is akin to a maritime plaintiff's choice to sue one joint-tortfeasor and not another. Unlike a settlement or voluntary dismissal with prejudice, Horizon's right to pursue Ausca has not been extinguished. As a result, the Court will not limit Horizon's recovery from Progressive at trial to only Progressive's proportion of liability for which the Court finds Progressive responsible.

Having determined Progressive may not ask the finder of fact to allocate fault to Ausca at trial, the Court must now consider Ausca's argument that Progressive may not seek contribution from Ausca, as doing so "would render meaningless the very arbitration clause that the Court has recognized is applicable as to any claim between Horizon and Ausca." R. Doc. 63-1 at 5. Despite making this argument, however, Ausca has pointed to no case law that would limit Progressive's ability to seek contribution from Ausca, simply because the time charter between Ausca and Horizon contains a binding arbitration agreement. Thus, should Progressive be held liable in this action for what it considers to be more than its equitable share, it can initiate a contribution

9

action against Ausca. *See The Juniata*, 93 U.S. 337, 340 (1876) (stating that "if defendant vessel has any rights against non-party vessel, they must be settled in another proceeding"); *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 602–03 (5th Cir. 2010) ("The right of contribution in admiralty collision claims is of ancient lineage."). Accordingly, the Court will deny Ausca's motion to dismiss Progressive's indemnity and contribution claims against it.

## IV. CONCLUSION

Because there is no case law directly on point that would allow the Court to extend the U.S. Supreme Court's holding in *McDermott* to cases in which a joint tort-feasor holds a binding arbitration agreement with the plaintiff, and there is no cases law indicating that Progressive would be barred from seeking contribution from Ausca based on Ausca's arbitration agreement with Horizon,

**IT IS ORDERED** that Third-Party Defendant Ausca Shipping Limited's Motion to Dismiss, R. Doc. 63, be and hereby is **DENIED**.

New Orleans, Louisiana on this 21st day of March, 2019.

_____
Eldon E. Fallon
U.S. District Court Judge